**COPY for Service**

| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND, ss | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO.: |

MOLLY FITZPATRICK, of North )
Yarmouth, Cumberland County, Maine, )
)
Plaintiff, )
)
v. )
)
KEITH EMERY, of Old Town, )
Penobscot County, Maine, )
)
In his Official Capacity as an Old Town )      **COMPLAINT**
Police Officer and in his Individual )    **(WITH DEMAND FOR JURY TRIAL)**
Capacity, )
)
and )
)
CITY OF OLD TOWN )
a municipality in the state of Maine, )
)
Defendants

NOW COMES Plaintiff and hereby complains against Defendants as follows:

### PRELIMINARY STATEMENT

1.    On April 12, 2015, Defendant Officer Keith Emery of the Old Town Police Department repeatedly misapplied the laws he is entrusted to enforce and unlawfully arrested Plaintiff Molly Fitzpatrick. His initial decision to arrest her for failing to give her correct date of birth after she had in fact given her correct date of birth on multiple occasions, according to his own report, was unlawful. His subsequent failure to verify her date of birth when she again gave her correct date of birth, as he was required to do under the law, and failure to release her from custody after he had even confirmed her correct date of birth through dispatch, which he was required to do under the law, was an unlawful arrest and evidence of the City of Old Town's inadequate training. Fitzpatrick, a young student at the University of Maine with no criminal history, spent the night in Penobscot County Jail, suffered physical injuries, and has a permanent

1

record of arrest as a result of Officer Emery's unlawful arrest and the City of Old Town's failure to train Emery.

## STATEMENT OF FACTS

2. Plaintiff Molly Fitzpatrick ("Fitzpatrick") is a resident of North Yarmouth, County of Cumberland, and State of Maine.

3. Defendant Keith Emery ("Officer Emery") is a police officer in Old Town, County of Penobscot, and State of Maine.

4. Defendant City of Old Town is a municipality organized under the laws of the State of Maine.

5. Fitzpatrick was a student at the University of Maine in Orono at all relevant times to this Complaint.

6. On or about 12 AM on April 12, 2015, Fitzpatrick was a passenger in a vehicle stopped by Officer Emery in Orono.

7. After stopping the vehicle for speeding, Officer Emery inquired if there were any drugs or alcohol in the car.

8. All occupants denied any drugs or alcohol were in the car.

9. Officer Emery checked the IDs of the passengers.

10. Fitzpatrick did not have an ID on her and was asked to step out of the car by Officer Emery, despite there being no probable cause of a crime or civil violation having been committed.

11. Officer Emery never asked Fitzpatrick whether she had been drinking.

12. Fitzpatrick has no criminal history of any kind.

13. Fitzpatrick was not accustomed to interacting with law enforcement officers and was very nervous at the time of her interaction with Officer Emery.

14. When asked for her date of birth, Fitzpatrick gave her correct date of birth, April 6, 1995, as stated in Officer Emery's own police report.

15. Officer Emery had Fitzpatrick get back into the car while he processed paperwork in his cruiser.

16. Officer Emery then gave dispatch an incorrect date of birth for Fitzpatrick, which unsurprisingly could not be confirmed as the correct date of birth for Fitzpatrick.

17. Officer Emery returned to the car and told Fitzpatrick that she needed to get out of the car because she gave a "fake ID."

18. Officer Emery never warned Fitzpatrick at any point that giving a false name or date of birth could be a crime.

19. Fitzpatrick again gave her correct date of birth after she was taken back out of the car.

20. Officer Emery told Fitzpatrick it was too late and became irate, yelling at her about giving the incorrect date of birth and using unprofessional language for a law enforcement officer under the circumstances.

21. Officer Emery pushed Fitzpatrick's body against his cruiser and placed her in handcuffs.

22. Fitzpatrick sustained cuts and bruising to her wrists from the manner that Officer Emery placed her in handcuffs.

23. Fitzpatrick was arrested for and charged with violating 17-A M.R.S. § 17(2).

24. Officer Emery checked Fitzpatrick's date of birth a second time through his radio dispatch after arresting her.

25. Dispatch confirmed that April 6, 1995 was the correct date of birth only minutes after Officer Emery had taken Fitzpatrick into custody.

26.  17-A M.R.S. 17(3) required Officer Emery to release Fitzpatrick from custody at this time when she was merely miles from her dorm room.

27.  Instead, Fitzpatrick was taken to the Penobscot County Jail and held until 3:45 AM.

28.  Fitzpatrick was subject to ridicule and inappropriate comments by prisoners and jail staff while awaiting her processing for bail.

29.  A record of Fitzpatrick's arrest in this matter will exist for the rest of her life and she will be required to explain her arrest to numerous parties, including potential employers.

30.  The charges against Fitzpatrick were dismissed the very next day in a follow up report where Officer Emery again misapplied the plain language of 17-A M.R.S. § 17(2).

### COUNT I
### UNLAWFUL ARREST
### (42 U.S.C. § 1983)
### (Fitzpatrick v. Emery in his Official and Individual Capacities)

31.  Fitzpatrick repeats and realleges Paragraphs 1 through 30 as if set forth fully herein.

32.  The right to be free from unreasonable search and seizure includes the right not to be arrested except when facts and circumstances, of which the arresting officer has reasonably trustworthy information, would warrant an ordinarily prudent and cautious police officer to believe the subject did commit or was committing a crime.

33.  At all times relevant to this Complaint, Fitzpatrick had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from false and unlawful arrest by Old Town police officers.

34.  17-A M.R.S. § 17(2) states that

Any person to whom a law enforcement officer is authorized to issue or deliver a summons pursuant to subsection 1 who intentionally fails or refuses to provide the officer reasonably

credible evidence of the person's correct name, address or date of birth commits a Class E crime, if the person persists in that failure or refusal after having been informed by the officer of the provisions of this subsection.

35. 17-A M.R.S. § 17(2) states further that

After informing the person of the provisions of this subsection, the officer may arrest the person either if the person intentionally refuses to furnish any evidence of that person's correct name, address or date of birth or if, after attempting to verify the evidence as provided for in this subsection, the officer has probable cause to believe that the person has intentionally failed to provide reasonably credible evidence of the person's correct name, address or date of birth.

36. Officer Emery was not authorized to issue or deliver a summons to Fitzpatrick because there was no probable cause that she had committed a crime or civil violation of any kind at any point.

37. Officer Emery never warned Fitzpatrick about the provisions of 17-A M.R.S. § 17(2).

38. Fitzpatrick provided Officer Emery with reasonably credible evidence of her correct name, address, and date of birth on multiple occasions.

39. Officer Emery failed to release Fitzpatrick from custody and comply with 17-A M.R.S. § 17(3) after verifying her correct date of birth.

40. There was no evidence of facts and circumstances sufficient to justify the belief that Fitzpatrick was committing a crime.

41. Officer Emery violated Fitzpatrick's right to be free from unlawful arrest when he arrested her.

42. At all times relevant to this Complaint, Officer Emery was acting under color of state law.

43. As a result of Officer Emery's actions Fitzpatrick suffered damages, including but not limited to pain, suffering, humiliation, embarrassment, and permanent impairment of future earning capacity.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in her favor and award her damages, reasonable attorney's fees and costs and whatever other relief this Court deems just and equitable.

## COUNT II
## UNLAWFUL ARREST
## (42 U.S.C. § 1983)
## (Fitzpatrick v. City of Old Town)

44. Fitzpatrick repeats and realleges Paragraphs 1 through 43 as if set forth fully herein.

45. At all times relevant to this Complaint, Fitzpatrick had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from false and unlawful arrest by Old Town police officers.

46. With deliberate indifference to the right of individuals in the City of Old Town to be free from invasions of bodily integrity and unlawful arrest by police, the City of Old Town failed to conduct adequate training and supervision of officers about their powers of arrest under 17-A M.R.S. § 17.

47. The training provided by the City of Old Town to Officer Emery was clearly inadequate for his task performed when he repeatedly misapplied the plain language of 17-A M.R.S. § 17.

48. Officer Emery was not trained to warn Fitzpatrick that failure to provide her correct date of birth could be a crime.

49. Officer Emery was not trained that he was required to verify information about Fitzpatrick's date of birth before placing her under arrest.

50. Officer Emery was not trained that he was required to release Fitzpatrick from custody if information about her date of birth was confirmed subsequent to her arrest.

51. At all times relevant to this Complaint, it was the longstanding widespread deliberately indifferent custom, habit, practice and/or policy of the City of Old Town to fail to properly train officers how to properly apply the requirements of 17-A M.R.S. § 17 without affecting an unlawful arrest.

52. These deliberately indifferent customs and/or inadequate trainings were closely related to and/or actually caused Fitzpatrick's unlawful arrest and the injuries resulting from that unlawful arrest.

53. As a result of the City of Old Town's actions and inactions, Fitzpatrick suffered damages, including but not limited to pain, suffering, humiliation, embarrassment, and permanent impairment of future earning capacity.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in her favor and award her damages, reasonable attorney's fees and costs and whatever other relief this Court deems just and equitable.

Date: January 12, 2016

WALTER F. MCKEE
Bar No. 7848

MATTHEW D. MORGAN
Bar No. 5044
McKee Billings, LLC, P.A.
133 State Street
Augusta, ME. 04330
(207) 620-8294